IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHERYL SHOCKLEY,

                Plaintiff,

  v.                                                                                              OPINION and ORDER

ASCEND LOANS, LLC, BENHTI ECONOMIC                                  24-cv-424-jdp
DEVELOPMENT CORPORATION, and W6LS, INC.,

                Defendants.

---

EUGENE CRAIG,

                Plaintiff,

  v.                                                                                              OPINION and ORDER

AWL, II, INC., BENHTI ECONOMIC                                           24-cv-493-jdp
DEVELOPMENT CORPORATION, and W6LS, INC.,

                Defendants.

---

Attorney Eric Crandall is counsel for the plaintiffs in two Fair Credit Reporting Act cases, *Shockley v. Ascend Loans, LLC, et al.*, No. 24-cv-424, and *Craig v. AWL, II, Inc., et al.*, No. 24-cv-493. Both cases were dismissed last year on tribal sovereign immunity grounds. *See* Dkt. 58 ('424 case); Dkt. 45 ('493 case).

The cases are still open to consider sanctions against attorney Crandall. Shortly after the cases were dismissed, counsel for defendants moved for sanctions in both cases, contending that plaintiffs and Crandall failed to withdraw proofs of service after they were shown to be false. Dkt. 62 ('424 case); Dkt. 47 ('493 case). The defendants, located in Oklahoma, were never actually served and the purported proofs of service were fake. That wasn't Crandall's fault: the process server was dishonest. But Crandall failed to withdraw the proofs of service

even after he was presented with compelling evidence that the proofs of service were fake. For that, Rule 11 sanctions are warranted. Those sanctions are adequate deterrence, so the court will decline to suspend Crandall's practice privileges.

BACKGROUND

*Shockley* and *Craig* have convoluted histories, which the court summarizes here.

A.  **History of the cases**

These Fair Credit Reporting Act cases arrived at the court in the summer of 2024. *Shockley* was filed here, Dkt. 1 ('424 case); *Craig* was removed from state court, Dkt. 1 ('493 case). In September 2024, defendants in both cases moved to dismiss on two grounds: insufficient service or, alternatively, tribal sovereign immunity. *See* Dkt. 32 ('424 case); Dkt. 22 ('493 case). In their motions to dismiss, defendants contended that plaintiffs filed false proofs of service because the individual who plaintiffs purportedly served, Jim Hopper, was not defendants' registered agent and had never been served with the summons and complaints for the lawsuits. *See* Dkt. 32, at 2–4 ('424 case); Dkt. 22, at 2–4 ('493 case). In response, plaintiffs contended that the service was presumptively valid because the proofs of service were signed. *See* Dkt. 45, at 9 ('424 case); Dkt. 37, at 8 ('493 case). In *Craig*, Crandall also filed an "affidavit of due diligence" purportedly signed by the process server, William Gillum. Dkt. 35, Ex. 1 ('493 case). The affidavit indicated that Gillum served "Jimmy Hooper" as authorized agent for service of process with "the documents" for both *Shockley* and *Craig*. *Id.*

The court dismissed *Shockley* because tribal sovereign immunity barred Shockley's claims against the defendants. *See* Dkt. 58 ('424 case). On the same day, November 6, 2024, defense counsel in *Craig* presented evidence that Gillum's affidavit of due diligence was false.

*See* Dkt. 42, at 1 ('493 case). Defense counsel submitted a declaration from the real William Gillum, indicating that he had not prepared the proofs of service in *Shockley* or *Craig*, nor had he prepared the affidavit of due diligence. *See* Dkt. 43 ('493 case). The Gillum declaration, combined with the earlier declaration of Jim Hopper, makes a compelling case that the proofs of service filed by Crandall were completely fake.

B. **History of the sanctions motions**

On December 2, 2025, defendants served Crandall with draft Rule 11 sanctions motions with letters indicating their intent to file the motions if Crandall failed to withdraw the service documents within 21 days. *See* Dkt. 63 ('424 case); Dkt. 48 ('493 case).

Two days later, Judge William M. Conley dismissed *Craig*, also on tribal sovereign immunity grounds. Dkt. 45, at 2 ('493 case). *Craig* was reassigned to this judge to resolve both sanctions motions. Dkt. 55 ('493 case).

Defendants filed their now-ripe Rule 11 sanctions motions on January 6, 2025. Dkt. 62 ('424 case); Dkt. 47 ('493 case). The court ordered Crandall to "(1) explain what steps, if any, he took to investigate the alleged falsified documents after November 6, 2024, and (2) identify the individual or individuals at Oklahoma Judicial Process Service with which he has had contact about these cases." Dkt. 72 ('424 case); Dkt. 56 ('493 case). In response, Crandall sought to depose his contact at the process server company, Makayla Saramosing. *See* Dkt. 73 and Dkt. 74 ('424 case); Dkts. 57–59 ('493 case). The court allowed Crandall to proceed with deposing Saramosing and directed him to file a supplemental response to the sanctions motions by August 19, 2025. Dkt. 75 ('424 case); Dkt. 60 ('493 case).

On August 21, 2025, Crandall moved to compel Saramosing to comply with his subpoenas. Dkt. 77 ('424 case); Dkt. 62 ('493 case). Saramosing moved to quash the

3

subpoenas. Dkt. 83 ('424 case); Dkt. 68 ('493 case). The court granted Saramosing's motions to quash because Crandall's subpoenas exceeded the geographic limits under Rule 45 of the Federal Rules of Civil Procedure. *See* Dkt. 84, at 2 ('424 case); Dkt. 69, at 2 ('493 case). The court gave Crandall thirty more days to explain what steps, if any, he took to investigate the alleged falsified documents after November 6, 2024. *See* Dkt. 84, at 3 ('424 case); Dkt. 69, at 3 ('493 case). Crandall did not respond.

On November 6, 2025, the court ordered Crandall to show cause why he should not be suspended from practice in this court for one year. Dkt. 88 ('424 case); Dkt. 73 ('493 case). In response, Crandall filed a declaration and submitted evidence showing that he took the following steps to investigate the alleged falsified documents:

- On November 6, 2024, he sent Saramosing an email message: "Mr. William Gillum has disavowed and renounced the declarations and affidavits of service in these two cases. How do you wish to proceed?" Dkt. 89, Ex. 4, at 3 ('424 case); Dkt. 74 ('493 case);

- The same day, Saramosing responded: "Eh? Lemme ask him to see what's going on[.]" *Id.*;

- On November 12, 2024, he sent a follow-up email message: "I have a scheduling hearing tomorrow in the Craig v. American Web Loan case. Any response from Mr. Gillum?" *Id.* at 2;

- The same day, Saramosing replied: "Nothing noteworthy, no ugh[.]" *Id.*;

- The next day, he sent: "You have to do better than that, as I paid you 1K to serve process, and now your agent has disavowed the service he made. Please provide me with Mr. Gillum's address, e-mail and phone." *Id.*;

- On January 7, 2025, he sent another email message to Saramosing:

    > Last year I paid your company to serve process in Oklahoma in a number of cases. Mr. William Gillum served the summons and complaint in 2 cases in July, and when his service was questioned, gave the attached October 2024 affidavit.

4

> Several weeks later, Mr. Gillum (now listed as William Gillum Jr.) filed a declaration that denied service and claimed in paragraph 6 that the October 2024 affidavit was false.
>
> Now, With U Loans is moving for sanctions. I would like to speak to you tomorrow about this. What is a good time?

*Id.*, Ex. 5, at 2–3;

- On January 9, 2025, he sent a follow-up email message: "I need a call today." *Id.* at 2;

- The same day, Saramosing responded: "Okay everything in oklahoma is shut down due to the heavy snow, but we will call you shortly[.]" *Id.*;

- At some point, Crandall called legal services for the process server company "over a dozen times," but "[n]o calls were returned." *Id.*, ¶ 12.

Crandall says that he "had no time to investigate further after Ms. Saramosing stopped communicating with [him] after January 9, 2025." *Id.*, ¶ 13.

ANALYSIS

The court will start by addressing defendants' motions for Rule 11 sanctions and then turn to the court's order to show cause why Crandall should not be suspended from practice in this court.

**A. Defendants' motions for Rule 11 sanctions**

Defendants move for sanctions under Rule 11, seeking reimbursement of the fees and expenses incurred in connection with the Rule 11 motion and in responding to the fake proofs of service. Dkt. 62 ('424 case); Dkt. 47 ('493 case). The court may sanction parties or their attorneys who violate Rule 11(b). *See* Fed. R. Civ. P. 11(c)(1). The blame here lies with Crandall, not plaintiffs.

5

Rule 11's central purpose is "to deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). One of the duties under Rule 11 is to ensure that, in all filings submitted by counsel, factual contentions have evidentiary support. Rule 11 provides, in pertinent part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> . . . .
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b).

The court may impose an appropriate sanction for violations of Rule 11(b). The court must consider "whether a sanctioned party's conduct was reasonable under the circumstances." *Brown v. Fed'n of State Med. Bds. of the U.S.*, 830 F.2d 1429, 1435 (7th Cir. 1987), *overruled on other grounds by Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928 (7th Cir. 1989); *see In re Ronco, Inc.*, 838 F.2d 212, 217 (7th Cir. 1988).

The court does not blame Crandall for the fake proofs of service. There's no evidence that Crandall himself created the fake proofs or service or that he directed anyone to create them. Crucially, there is no evidence that Crandall knew they were fake when he filed them. Neither does the court expect Crandall to investigate and get to the bottom of the egregious acts of forgery committed by the Oklahoma process server.

But the court will hold Crandall accountable for his own actions. Once he was presented with compelling evidence—on November 6, 2024—that the proofs of service were fake, he

should have taken immediate action to investigate the service of process. And once defense counsel served Crandall with their Rule 11 letters, the only reasonable course of action would be to withdraw the proofs of service, because he could no longer reasonably contend that the factual contentions in the proofs of service had viable evidentiary support.

The court does not require Crandall to get to the bottom of the mess at the process server. But if Crandall wanted to stand by the proofs of service, he needed to investigate their validity in response to defense counsel's well-supported allegations. But Crandall's investigation was superficial. He's done nothing more than exchange a handful of email messages with his contact at the process server company and attempt to call the company's legal services department. *See* Dkt. 89, ¶¶ 9, 11–12. Crandall says he "had no time to investigate further after [his contact] stopped communicating with [him] after January 9, 2025." *Id.*, ¶ 13. If Crandall's investigation revealed anything, it's that the process server he had engaged was untrustworthy.

Any reasonable attorney, faced with the same circumstances, would have withdrawn the proofs of service. But rather than withdraw the documents, Crandall stood pat on Saramosing's words and "Gillum's" affidavit of due diligence. The court concludes that Crandall violated Rull 11(b) by failing to withdraw the proofs of service once defense counsel served its Rule 11 letters because a reasonable attorney would have recognized that the factual contentions in the proofs of service lacked valid evidentiary support.

The court must determine an appropriate sanction, which must be "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Defendants have asked for a reasonable and moderate sanction, which is to require Crandall to pay the fees and expenses incurred in making the Rule 11 motions

7

and in responding to the fake proofs of service. The court dismissed *Shockley* on sovereign immunity grounds the same day that defendants presented the declaration from the real Gillum. And Judge Conley dismissed *Craig* on the same grounds a few days later. So Crandall's Rule 11 violation didn't extend the litigation on the merits. But defense counsel here discovered serious misconduct, and Crandall's failure to concede that service had not validly been made ended up dragging out the resolution of the Rule 11 motions. The court called upon Crandall to explain his own conduct, Dkt. 72 ('424 case); Dkt. 56 ('493 case), but he was slow to do so, and his explanation is not completely satisfying.

Counsel are encouraged to stipulate to the amount of fees and expenses to be recovered. If they are not able to agree on the amount, defendants may have until February 2, 2026, to submit an accounting of their reasonable attorney fees and expenses incurred in (1) preparing their Rule 11 letters to Crandall, their Rule 11 motions and replies, their briefs in opposition to Crandall's motion to compel Saramosing to comply with his subpoenas, and the itemized accounting of their reasonable attorney fees and expenses; and (2) preparing responses to the allegedly falsified proofs of service and supporting affidavit of due diligence, and the allegations contained in plaintiffs' filings relying on those falsified documents. Defendants' request must comply with the court's requirements for fee requests. Attachment to Dkt. 56, at 39 ('424 case). Crandall may have 14 days to object to the reasonableness of the attorney fees and expenses.

## B. Potential suspension of practice under the court's inherent authority

The court ordered that Crandall "show cause why he should not be suspended from practice in this court for one year." Dkt. 88 ('424 case); Dkt. 73 ('493 case). Federal courts have inherent authority to suspend attorneys from practice for their misconduct. *See Matter of*

8

*Lisse*, 921 F.3d 629, 643 (7th Cir. 2019); *In re Snyder*, 472 U.S. 634, 643 (1985). But courts must "exercise caution in invoking [their] inherent power," reserving it for bad-faith conduct that willfully abuses the judicial process and is not adequately sanctioned by the Federal Rules of Civil Procedure. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991); *see Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1058–59 (7th Cir. 1998).

The court is not fully satisfied with Crandall's response to the order to show cause, because he does not explain why he did not withdraw the proofs of service during the Rule 11 safe harbor period. Dkt. 89 ('424 case); Dkt. 74 ('493 case). He also doesn't explain why he believed that Makayla Saramasong and her company, OJPS Legal Process, would be a reliable process server in the first place. But the court concludes that Rule 11 provides an adequate sanction, so a suspension of his practice privileges is not warranted.

ORDER

1. Defendants AWL II, Inc. and W6LS, Inc.'s motions for sanctions, Dkt. 62 ('424 case) and Dkt. 47 ('493 case), are GRANTED.

2. Not later than February 2, 2026, AWL II, Inc. and W6LS, Inc. may submit an accounting of any reasonable attorney fees and expenses they incurred in (1) preparing their Rule 11 letters to Crandall, their Rule 11 motions and replies, their briefs in opposition to Crandall's motion to compel Saramosing to comply with his subpoenas, and the itemized bill of their reasonable attorney fees and expenses; and (2) preparing responses to the allegedly falsified proofs of service and supporting affidavit of due diligence, and the allegations contained in plaintiffs' filings relying on those falsified documents. Crandall may have fourteen days to oppose the amount of fees and expenses.

Entered January 12, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge